Filed 2/8/19 after rehearing

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SAVE LAFAYETTE TREES et al.,<br><br>　　　Plaintiffs and Appellants,<br><br>v.<br><br>CITY OF LAFAYETTE,<br><br>　　　Defendant and Respondent;<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>　　　Real Party in Interest and Respondent. | A154168<br><br>(Contra Costa County<br>Super. Ct. No. MSN17-1142) |

Petitioners Save Lafayette Trees, Michael Dawson, and David Kosters (collectively Save Lafayette Trees) appeal an order sustaining without leave to amend a demurrer to their petition for writ of mandate challenging the City of Lafayette's (city) approval of a letter of agreement for tree removal (agreement) with real party in interest Pacific Gas and Electric Company (PG&E). Save Lafayette Trees contends the trial court erred in concluding that service of its petition for a writ of mandate was untimely under Government Code[1] section 65009. In an opinion filed on October 23, 2018, we concluded that the claims asserted under the planning and zoning law (§ 65000 et seq.), the city's general plan, and the city's tree protection ordinance (Lafayette Mun. Code, § 6-1701 et seq. (tree ordinance)) are barred by section 65009, subdivision (c)(1)(E), but that the claim asserted under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.) was timely filed and served under Public Resources Code sections 21167, subdivision (a) and 21167.6, subdivision (a). Accordingly, we affirmed the order sustaining the demurrer as to the second, third, and fourth causes of action but reversed the order sustaining the demurrer to the first cause of action.

---

[1] All statutory references are to the Government Code unless otherwise noted.

1

Thereafter, both PG&E and Save Lafayette Trees filed petitions for rehearing. We denied the petition filed by Save Lafayette Trees but granted PG&E's petition to allow reconsideration of our conclusion regarding the CEQA claim. Having considered supplemental briefs filed by both parties, we find no reason to alter our original conclusions and, therefore, reissue the opinion with limited modification.

**Background**

On March 27, 2017, the city approved the agreement with PG&E which authorized and imposed conditions on the removal of up to 272 trees within its local natural gas pipeline rights-of-way.[2] The staff report prepared in connection with the agreement explains, "The removal of 216 protected trees constitutes a *Major Tree Removal Project* per the [Lafayette Municipal Code]. Under the tree protection regulations, for this tree removal project PG&E would be required to (1) provide information regarding the project, (2) obtain a tree removal permit, and (3) provide mitigation for the removed trees. [¶] PG&E is willing to comply with the intent of the tree protection regulations and will provide the requested information and all applicable mitigation. However, PG&E has taken the position that it is exempt from obtaining any discretionary permits, including a tree removal permit. City staff disagrees with this position. To ensure that the [community pipeline safety initiative] can move forward and to protect the public safety, PG&E and City staff have agreed to process the [community pipeline safety initiative] tree removal project under [Lafayette Municipal Code] section 6-1705(b)(S). This section allows the city to allow removal of a protected tree 'to protect the health, safety and general welfare of the community.' City staff is willing to process the [community pipeline safety initiative] under this provision as long as PG&E provides all requested information and pays all applicable mitigation fees."

On June 26, 2017, Save Lafayette Trees filed a petition challenging the city's action. The petition was served the following day.

---

[2] PG&E's request for judicial notice of the agreement and related documents in the administrative record is granted.

2

The petition's first cause of action alleges the city failed to comply with CEQA before approving the agreement. The second cause of action alleges that the city approved the agreement in violation of the substantive and procedural requirements of the planning and zoning law, the city's general plan, and the tree ordinance (collectively, planning and zoning law claims). The third cause of action alleges the city violated the due process rights of the individual petitioners by failing to provide sufficient notice of the hearing at which the agreement was approved. The fourth cause of action alleges the city "proceeded in excess of its authority and abused its discretion in approving the tree removal agreement without compliance with CEQA, the [planning and zoning law], the city's general plan, the Municipal Code, and the due process clause of the California Constitution" in violation of Code of Civil Procedure sections 1085 and 1094.5. An amended petition was filed in August 2017 realleging the same causes of action.

PG&E filed a demurrer to the amended petition on the ground that it was barred by section 65009, subdivision (c)(1)(E), which requires that an action challenging a decision regarding a zoning permit be filed and served within 90 days of the decision. PG&E explained that while the original petition was timely *filed* on June 26, 2017, the original petition was not *served* until after the 90-day deadline. The city joined in PG&E's demurrer. Save Lafayette Trees opposed the demurrer on the ground its claims fall outside the scope of section 65009 and that, even if section 65009 applies to its planning and zoning law claims, its CEQA claim was timely filed and served under the longer limitations period provided under the Public Resources Code.

The trial court sustained the demurrer without leave to amend, finding that the "action was not served on either [the city or] PG&E within the 90-day period for filing and service required by the applicable statute of limitations set forth in [section] 65009(c)(1)(E), and is thus time-barred." The court entered a judgment dismissing the petition.

Save Lafayette Trees then filed a motion to vacate the judgment arguing, among other things, that its planning and zoning law claims were subject to the statute of

3

limitations found in section 6-236 of the city's Municipal Code rather than section 65009. The court denied the motion.

Save Lafayette Trees timely filed a notice of appeal from the judgment and denial of its motion to vacate.

**Discussion**

1. *Standard of Review*

The trial court's decision to sustain the demurrers without leave to amend is reviewed de novo. In conducting the review, this court exercises its independent judgment to determine whether the action can proceed under any legal theory. (*Honig v. San Francisco Planning Dept.* (2005) 127 Cal.App.4th 520, 524.) Leave to amend should not be granted if the pleadings disclose the action is barred by a statute of limitation. (*Ibid.*)

2. *The causes of action based on violations of the planning and zoning law claims were not timely served under section 65009.*

The planning and zoning law establishes the authority of most local government entities to regulate the use of land. (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 518-519, fn. 18.) Under the planning and zoning law, each county and city must "adopt a comprehensive, long-term general plan for the physical development of the county or city . . . ." (§ 65300.) The general plan consists of a "statement of development policies . . . setting forth objectives, principles, standards, and plan proposals." (§ 65302.) "Subordinate to a general plan are zoning laws, which regulate the geographic allocation and allowed uses of land. [Citation.] [¶] 'Zoning laws regulate land uses in two basic ways. Some uses are permitted as a matter of right if the uses conform to the zoning ordinance. Other sensitive land uses require discretionary administrative approval pursuant to criteria in the zoning ordinance. [Citation.] They require a conditional use permit.' " (*Gonzalez v. County of Tulare* (1998) 65 Cal.App.4th 777, 784-785.) To provide certainty for property owners and local governments regarding decisions by local agencies made pursuant to the planning and zoning law, the

4

Legislature enacted "a short, 90-day statute of limitations, applicable to both the filing and service of challenges to a broad range of local zoning and planning decisions." (*Honig v. San Francisco Planning Dept.*, *supra,* 127 Cal.App.4th at p. 526; § 65009, subds. (a)(3), (c)(1).)

As relevant here, section 65009, subdivision (c)(1), provides that "no action or proceeding shall be maintained in any of the following cases by any person unless the action or proceeding is commenced and service is made on the legislative body within 90 days after the legislative body's decision: [¶] . . . [¶] (E) To attack, review, set aside, void, or annul any decision on the matters listed in Sections 65901 and 65903, or to determine the reasonableness, legality, or validity of any condition attached to a variance, conditional use permit, or any other permit." The "matters listed" in sections 65901 and 65903 include "conditional uses or other permits when the zoning ordinance provides therefor" and "variances from the terms of the zoning ordinance." (§ 65901, subd. (a); see also *Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757, 766, fn. 2 [Sections 65901 and 65903 "provide for hearing and decision on, and administrative appeals concerning, applications for variances, conditional use permits, and other permits."]; *Royalty Carpet Mills, Inc. v. City of Irvine* (2005) 125 Cal.App.4th 1110, 1119, fn. 6 [same] (*Royalty Carpet*).) Section 65009, subdivision (c)(1)(E) is to be applied broadly to all types of challenges to permits and permit conditions, as long as the challenge rests on a "decision" of a local authority relating to a permit or seeks to "determine the reasonableness, legality, or validity of any condition attached to a . . . conditional use permit, or any other permit." (*Travis, supra*, at pp. 766-768.) In short, an action challenging "any decision" by a "legislative body" regarding a variance, a conditional use permit, or other permit provided for by a local zoning ordinance must be filed and served within 90 days of the decision.

The Open Space and Conservation Element of the city's general plan includes findings reflecting the value of protected trees to the city and calls for "protection for significant native trees and woodlands" under the tree ordinance. (City of Lafayette General Plan, Open Space and Conservation Element, Res. No. 2002-56 (Oct. 28, 2002)

5

§ III-7.) The tree ordinance is a zoning ordinance, located in the "Planning and Land Use" title of the city's Municipal Code. Section 6-1704 requires a permit for the removal of a protected tree and sections 6-1706 and 6-1707, authorizes the imposition of reasonable conditions on the permit. Depending on the level of permit sought, either the planning and building department director or, among others, the planning commission or city council, is charged with approving the permit. (Lafayette Mun. Code, §§ 6-1706, 6-1707.) Under section 6-1705(b)(5), an applicant may seek an exception to the requirements of the tree ordinance when "the city must remove a protected tree to protect the health, safety and general welfare of the community."

Although here the city entered into an agreement approving the removal of trees under section 6-1705 of the city's Municipal Code, rather than issuing a "permit" for their removal, there is no meaningful difference between the two in this instance. In its original petition, Save Lafayette Trees characterized the city's decision as a "permit[] allowing land use" and in its amended complaint as an "approval[] allowing land use." Both are properly considered decisions relating to the matters listed in sections 65901 and 65903. Accordingly, the city's decision falls squarely within the scope of section 65009.

The arguments made by Save Lafayette Trees to the contrary are not persuasive. Save Lafayette Trees argues, "section 65009 is a statute adopted to address California's 'housing crisis' by 'reduc[ing] delays and restraints upon expeditiously completing housing projects.' (. . . § 65009(a)(1).) It does not by its terms, or even by implication, apply to the city's contract with PG&E to remove mature trees along public hiking trails." Although one of the three findings made by the Legislature with respect to section 65009 relates to housing,[3] nothing in section 65009, subdivision (c)(1), restricts its application to decisions involving housing. As set forth above, courts have interpreted the statute as applying to challenges to a broad range of local zoning and planning decisions. (See, e.g., *Urgent Care Medical Services v. City of Pasadena* (2018) 21 Cal.App.5th

---

[3] Section 65009, subdivision (a)(1) reads, "The Legislature finds and declares that there currently is a housing crisis in California and it is essential to reduce delays and restraints upon expeditiously completing housing projects."

1086, 1096 [ordinance prohibiting medical marijuana dispensaries]; *Okasaki v. City of Elk Grove* (2012) 203 Cal.App.4th 1043, 1048, [variance to landowners, in order to authorize pool and spa in setback zone].)

Next, Save Lafayette Trees argues that section 65009 is not applicable because the city was not "acting in one of the roles *specified* in sections 65901 and 65903, i.e., as a board of zoning adjustment, zoning administrator or a board of appeal." However, section 65009 expressly incorporates the "matters" listed in sections 65901 and 65903, regardless of the legislative body charged with making the decision. The courts "have rejected the notion that the reviewing body, rather than the underlying decision being reviewed, determines the applicability of Section 65009." (*AIDS Healthcare Foundation, Inc. v. City & County of San Francisco* (2016 N.D.Cal.) 208 F.Supp.3d 1095, 1101, and cases there cited.) To the extent that *People v. Gates* (1974) 41 Cal.App.3d 590, 596-598, decided under subsequently repealed section 65907, implies the contrary, we disagree. "The language of Section 65009 is broad. It covers 'any decision' on the 'matters listed' in Sections 65901 and 65903" (*AIDS Healthcare Foundation, Inc., supra,* at p. 1100) and it therefore applies to the decision approving the tree removal contract.

Save Lafayette Trees also argues that its action is subject to the longer, 180-day statute of limitations found in the city's Municipal Code section 6-236, which formerly read, "An action . . . to attack, review, set aside or annul a decision of the city council under this title . . . shall not be maintained by any person unless the action . . . is brought within 180 days after the date of the decision."[4] Although the city raises several sound procedural grounds for rejecting this argument, we, like the trial court, choose to reject the claim on the merits. We agree with the trial court that Municipal Code section 6-236 was preempted by section 65009.

Section 65009 makes clear that no action or proceeding challenging a local legislative body's decision regarding matters listed in sections 65901 and 65903 shall be

_____

[4] PG&E's request for judicial notice of the documents relating to the repeal of section 6-236 and of an ordinance adopted by the City of Temecula is denied on the ground of relevance.

maintained unless it is filed and served within 90 days of the challenged decision. (§ 65009, subds. (c)(1), (c)(1)(E).)[5] Otherwise valid, local legislation that conflicts with state law is preempted by such law and is void. (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897.) " 'A conflict exists if the local legislation " 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.' " ' [Citations.] [¶] Local legislation is 'duplicative' of general law when it is coextensive therewith. [Citation.] [¶] Similarly, local legislation is 'contradictory' to general law when it is inimical thereto." (*Id*. at pp. 897-898.) Insofar as section 65009 applies to the present action and expressly conflicts with the local ordinance, it preempts the local ordinance.

Relying on *Pan Pacific, Inc. v. County of Santa Cruz* (1978) 81 Cal.App.3d 244, 252 (*Pan Pacific*), Save Lafayette Trees argues that the local ordinance is not preempted by section 65009 because the Legislature has not "evinced an intent to occupy the field in the planning and zoning law area." Because the state and local statutes directly conflict, we need not decide whether section 65009 preempts the local ordinance on this alternative ground. We note, however, that the reasoning in *Pan Pacific* arguably is no longer persuasive in light of subsequent legislative action expanding the scope of the statute of limitations under the planning and zoning law. (See Barclay & Gray, California Land Use and Planning Law (35th ed. 2016) p. 529 ["In *Pan Pacific Properties, Inc. v. County of Santa Cruz*, the court held that a county ordinance that established a 30-day statute of limitations for judicial review of county zoning ordinances was not preempted by state law, since at the time the Planning and Zoning Law contained no statute specifically applicable to such challenges. [Citation]. However, since Pan Pacific was decided, the Legislature has enacted and amended . . . section 65009 to establish statutes of limitation applicable to most, if not all, planning and zoning decisions."].)

---

[5] Although the statute provides an exception for any law with a shorter limitations period (§ 65009, subd. (g)), former Municipal Code section 6-236 plainly did not provide a shorter limitations period.

Finally, Save Lafayette Trees argues that it is excused from compliance with section 65009 because the city failed to provide its members with written notice prior to the city council's meeting as required by section 6-211 of the city's Municipal Code,[6] section 65905,[7] and the due process clause of the California Constitution. According to Save Lafayette Trees, respondents "cannot avail themselves of section 65009's statute of limitations because the city failed to provide the public access, due process and procedural uniformity required by the [planning and zoning law]." Save Lafayette Trees has failed to allege, however, facts to support its contention that its members were entitled to personal notice. The amended complaint alleges generally that "Many members of Save Lafayette Trees and their supporters, and other members of the public, reside within 300 feet of the trees slated for removal pursuant to the tree removal agreement." The specific allegations regarding petitioners state only that Michael Dawson is "a city resident and homeowner" and that David Kosters "resides in the city," that they and their families "regularly use and enjoy the healthy, mature trees that PG&E proposes to remove pursuant to the tree removal agreement," and that they "reside in proximity to trees that would be removed" under the agreement. These facts do not establish that either petitioner lives within 300 feet of any of the trees to be removed or

---

[6] Under section 6-211, subdivision (a) of the city's Municipal Code, the notice requirement for a public hearing on a "land use permit" includes "Mailing notice postage prepaid and at least ten calendar days before the hearing to owners of property which is contiguous to the subject property, and to the owners of other property which, in the opinion of the planning director, is directly affected by the proposal. . . ."

[7] Section 65905 reads: "(a) Except as otherwise provided by this article, a public hearing shall be held on an application for a variance from the requirements of a zoning ordinance, an application for a conditional use permit or equivalent development permit, a proposed revocation or modification of a variance or use permit or equivalent development permit, or an appeal from the action taken on any of those applications. [¶] (b) Notice of a hearing held pursuant to subdivision (a) shall be given pursuant to Section 65091." Section 65091, subdivision (a)(4) requires that "Notice of the hearing shall be mailed or delivered at least 10 days prior to the hearing to all owners of real property as shown on the latest equalized assessment roll within 300 feet of the real property that is the subject of the hearing. . . ."

was entitled to greater service than other members of the general public.[8] As respondents note, the public was given notice under the Brown Act (§ 54950 et seq.) in advance of the March 27 hearing that the city council would be reviewing "the PG&E Community Pipeline Safety Initiative requiring the removal of 216 protected trees" and deciding whether to authorize the city manager to execute the agreement with PG&E.

Accordingly, the trial court properly sustained without leave to amend the city's demurrer to the second, third and fourth causes of action.[9]

---

[8] Save Lafayette Trees argued in its petition for rehearing that if given leave to amend it could allege with greater specificity which of its "many members" live within 300 feet of trees slated for removal. The proposed amendment comes too late. Not only did Save Lafayette Trees fail to make this request in the trial court, in its opening appellate brief it argued only that the city's failure to provide notice by mail to "affected property owners, including petitioners here" tolled the limitations period. In reply, respondents argued that "[f]ully crediting the [first amended complaint's] properly pleaded *factual* allegations," Save Lafayette Trees failed to establish a "right[] to notice as 'directly affected' owners." In their reply brief, Save Lafayette Trees repeated its argument that its complaint alleges a right to notice because the agreement provides for the removal of "iconic trees in proximity to petitioners' homes." The belated amendments first proposed by Save Lafayette Trees in its petition for rehearing do not establish that the trial court abused its discretion in denying leave to amend to allege facts not brought to its attention.

[9] Save Lafayette Trees acknowledges, "Under settled law, the statute of limitations applicable to [its] due process claims derives from the statute or ordinance on which those claims are based." Thus, because its due process claim "arises from the city's failure to comply with the 10-day public notice provisions" before approving the agreement, this claim is also barred. Similarly, the question of which statute of limitation applies to a Code of Civil Procedure section 1085 mandamus action is to be resolved "not by the remedy prayed for but by the nature of the underlying right or obligation that the action seeks to enforce." (*Branciforte Heights, LLC v. City of Santa Cruz* (2006) 138 Cal.App.4th 914, 926.) Save Lafayette Trees cannot rely on the Code of Civil Procedure section 338's three-year statute of limitations that is applicable to actions "upon a liability created by statute" to extend the limitations period on its barred claims. (Cf. *Travis v. County of Santa Cruz, supra,* 33 Cal.4th at p. 771; *Urban Habitat Program v. City of Pleasanton* (2008) 164 Cal.App.4th 1561, 1576-1577.)

3. *The CEQA cause of action was timely filed and served under Public Resources Code sections 21167 and 21167.6.*

Save Lafayette Trees contends that section 65009 is not applicable to the CEQA cause of action because it conflicts with the more specific CEQA limitations period found in Public Resources Code sections 21167, subdivision (a) and 21167.6, subdivision (a). Under Public Resources Code section 21167, subdivision (a), an action "alleging that a public agency is carrying out or has approved a project that may have a significant effect on the environment without having determined whether the project may have a significant effect on the environment shall be commenced within 180 days from the date of the public agency's decision to carry out or approve the project." Under Public Resources Code section 21167.6 subdivision (a), the complaint or petition "shall be served personally upon the public agency not later than 10 business days from the date that the action or proceeding was filed." Thus, under the Public Resource Code provisions, the complaint in this action was timely filed and served.

"As a general rule, when two statutes relate to the same subject, the more specific one will control unless they can be reconciled. [Citations.] When the two statutes can be reconciled, they must be construed 'in reference to each other, so as to "harmonize the two in such a way that no part of either becomes surplusage." ' " (*Royalty Carpet, supra*, 125 Cal.App.4th at p. 1118.)

There is no dispute that section 65009, subdivision (c)(1)(E) and Public Resources Code sections 21167 and 21167.6 both relate to the same subject: the time period within which service of a petition challenging approval of a zoning permit must be made. (*Royalty Carpet*, *supra*, 125 Cal.App.4th at p. 1121 ["[C]hallenges under the Public Resources Code constitute a subset of general challenges to conditional use permits."].) If the statutes cannot be harmonized, the more specific Public Resources Code provisions govern. (*Committee for a Progressive Gilroy v. State Water Resources Control Bd*. (1987) 192 Cal.App.3d 847, 859 [CEQA statute of limitations, rather than statute of limitations of Porter-Cologne Water Quality Control Act, govern CEQA claims.]; see

11

also Pub. Resources Code, § 21167.6 [CEQA service requirements apply "notwithstanding any other law."].)

In *Royalty Carpet*, the court found that the service requirements under the two provisions could be reconciled because the time period for service under the Public Resources Code is not a strict time limit. (*Royalty Carpet, supra,*125 Cal.App.4th at p. 1122, citing *Board of Supervisors v. Superior Court* (1994) 23 Cal.App.4th 830, 848 [Compliance with the time requirements set forth in Public Resources Code section 21167.6 may be excused for "good cause."].) To give effect to the language of both statutes, the court reasoned that the shorter 40-day period for filing and service of the action, provided by Public Resources Code sections 21167, subdivision (b)[10] and 21167.6, was effective absent a showing of good cause for an extension of the time for service, and the longer period, provided by section 65009, subdivision (c)(1)(E), established the outer limit by which the action must be served. The court explained that "To accomplish the Legislature's purpose of limiting the time in which a decision regarding a conditional use permit can be challenged by filing and serving a petition, in no event can service of the petition be accomplished beyond the 90-day time bar contained in the Government Code. To conclude otherwise would be to ignore the absolute limitations bar contained in . . . section 65009." (*Royalty Carpet, supra,* at p. 1123.)

Save Lafayette Trees correctly distinguishes the holding in *Royalty Carpet* on the ground that this case involves the longer time limit in Public Resources Code section 21167, subdivision (a) rather than the 30-day limit found in subdivision (b). In *Royalty Carpet* the more specific provision in the Public Resources Code imposed a shorter limitation period, whereas in this case requiring service within 90 days would

---

[10] Under Public Resources Code section 21167, subdivision (b), "An action or proceeding alleging that a public agency has improperly determined whether a project may have a significant effect on the environment shall be commenced within 30 days from the date of the filing of the notice required by subdivision (a) of Section 21108 or subdivision (a) of Section 21152."

impermissibly cut in half the 180-day period allowed for filing the CEQA action under the Public Resources Code. That conflict cannot be reconciled.[11]

*Friends of Riverside's Hills v. City of Riverside* (2008) 168 Cal.App.4th 743, relied on heavily by PG&E in its petition for rehearing, is distinguishable for the same reason. In that case, the Friends of Riverside's Hills timely filed its CEQA action within the shorter 30-day time limit but failed to comply with the 90-day service of summons requirement found in section 66499.37 of the Subdivision Map Act (§ 66410 et seq.). Relying on *Royalty Carpet, supra,* 125 Cal.App.4th 1110, the court concluded that the CEQA claims were barred because "[b]oth CEQA and section 66499.37 can be harmonized. Friends could easily have complied with the [Subdivision Map Act] service of summons requirement without running afoul of the CEQA procedures; it simply failed to do so." (168 Cal.App.4th at p. 753.) As noted above, the 180-day statute of limitations found in Public Resources Code section 21167, subdivision (a) cannot be harmonized with the 90-day service period required by section 65009, subdivision (c)(1)(E).

Alternatively, even if the 90-day statute of limitations for filing an action under section 65009 is considered the more specific statute and governs the deadline for filing

---

[11] This reasoning was well articulated in an unpublished 2006 opinion of Division 8 of the Second Appellate District. While we do not rely on the unpublished opinion as authority, we adopt as our own its reasoning: "In this case, [Public Resources Code] section 21167, subdivision (a) cannot be harmonized with section 65009, and as a result does not control the first cause of action. Unlike *Royalty Carpet*, where the shorter limitations period could be extended for good cause up to the strict 90-day period specified by section 65009, the shorter limitations period in this case is the strict 90-day period specified by section 65009. Because the shorter period is strictly construed, it cannot be harmonized with the longer period specified by [Public Resources Code] section 21167, subdivision (a). In *Royalty Carpet,* the shorter period was effective absent a showing of good cause for an extension, and the longer period established an absolute bar to an action. The language of both statutes was thus given effect. In this case, however, the longer period specified by [Public Resources Code] section 21167, subdivision (a) cannot be given effect due to the strict nature of section 65009. Since [Public Resources Code] section 21167, subdivision (a) and section 65009 cannot be harmonized, section 21167, subdivision (a) controls because it is the more specific of the two statutes." (*Friends of the Raymond Theatre v. City of Pasadena* (Oct. 17, 2006, B184315) [nonpub. opn.].)

13

the complaint, the complaint was timely filed within the 90 day period. Although service was not made until after the 90th day, the period for service is governed by Public Resources Code section 21167.6, which applies "[n]otwithstanding any other law." Section 21167.6 governs when in conflict with section 65009. (*Board of Supervisors v. Superior Court* (1994) 23 Cal.App.4th 830, 841 ["[T]he provisions of section 21167.6 must prevail over *directly contradictory* provisions in other statutes."].) While the two service provisions may be harmonized when a shorter statute of limitations for filing applies (*Royalty Carpet, supra,* 125 Cal.App.4th at pp. 1122-1123), if *filing* is required by the 90th day, application of the 90-day limitation to the *service* requirement would nullify and, thus, directly conflict with, the 10 days allotted for service under Public Resource Code section 21167.6. Since service was made within the period provided in section 21167.6, the CEQA cause of action has been timely prosecuted even if the action were required to have been filed within 90 days.

Accordingly, the trial court erred in sustaining the demurrer to the first cause of action.

### Disposition

As to causes of action two, three, and four, the order sustaining the demurrers is affirmed. As to cause of action one, the order sustaining the city's demurrer is reversed, and the trial court is directed to enter an order vacating its previous order and enter an order overruling the demurrer as to that cause of action. The parties shall bear their own costs on appeal.

_____
Pollak, J.[*]

_____

[*] Presiding Justice of the Court of Appeal, First Appellate District, Division Four, sitting by assignment pursuant to article VI, section 6 of the California Constitution.

14

SIGGINS, P. J. and ROSS, J., Concurring.

We concur fully in the reasoning and holding that the claims Save Lafayette Trees, Michael Dawson, and David Kosters alleged under the Planning and Zoning Act, the city's general plan and the city's tree protection ordinance (planning and zoning law claims) were not timely served, and that we must affirm the demurrer without leave to amend on those claims. We also agree that the California Environmental Quality Act (CEQA) claim was timely served, as required under the controlling statute, Public Resources Code section 21167.6. Thus, we concur fully in the judgment.

We write separately because it is unnecessary to address whether the time for filing the CEQA claim was governed by Public Resources Code section 21167, or the shorter period provided in Government Code section 65009.[1] The petition was timely filed even if we assume, without deciding, that the shorter section 65009 limitations period applied to all the alleged claims. The critical question that bears on the CEQA claim is whether it was timely served.

As the lead opinion concludes, the CEQA service provision in Public Resources Code section 21167.6 applies "[n]otwithstanding any other law." While section 65009 states that "no action or proceeding shall be maintained . . . by any person" to challenge a conditional use permit, or any other permit "unless the action or proceeding is commenced and service is made on the legislative body within 90 days after the legislative body's decision," here, because the complaint alleges claims under both CEQA and the planning and zoning law, section 65009 must be read in light of Public Resources Code section 21167.6.

" 'As a general rule, when two statutes relate to the same subject, the more specific one will control unless they can be reconciled. [Citations.] When the two statutes can be reconciled, they must be construed "in reference to each other, so as to 'harmonize the two in such a way that no part of either becomes surplusage.' " ' [Citations.] Put another way, 'If we can reasonably harmonize "[t]wo statutes dealing with the same

_____

[1] All statutory references are to the Government Code unless otherwise noted.

1

subject," then we must give "concurrent effect" to both, "even though one is specific and the other general." ' " (*Friends of Riverside's Hills v. City of Riverside* (2008) 168 Cal.App.4th 743, 753.)

The result we achieve today gives effect to the plain language of both statutes. The planning and zoning law claims addressed in section 2 of the lead opinion must be both filed and served within 90 days of a local agency decision on a permit. (Lead opn. *ante*, at p. 4; accord, § 65009, subd. (c)(1)(E).) The complaint was filed within 90 days of the agency decision. If section 65009 controlled the date for service, it should have been served within the same period. But as to service of the first cause of action, Public Resources Code section 21167.6 applies "[n]otwithstanding any other law" and subdivision (a) provides that a CEQA claim "shall be served personally upon the public agency not later than 10 business days from the date that the action or proceeding was filed." Here, the complaint was served personally upon the agency too late to comply with the planning and zoning law, but within the time allowed under CEQA. For this reason, we would give effect to both statutes, and agree that the planning and zoning law claims are barred, but the CEQA claim can proceed.

As stated in *Friends of Riverside's Hills,* "when two statutes relate to the same subject, the more specific one will control unless they can be reconciled." (*Friends of Riverside's Hills v. City of Riverside*, *supra,* 168 Cal.App.4th at p. 753.) The lead opinion follows the analysis of *Committee for a Progressive Gilroy v. State Water Resources Control Bd.* (1987) 192 Cal.App.3d 847 to conclude that the CEQA statute of limitations in Public Resources Code sections 21167 and 21167.6 is a narrower statutory scheme than the planning and zoning law limitations period in section 65009. The lead opinion also discusses *Royalty Carpet Mills, Inc. v. City of Irvine* (2005) 125 Cal.App.4th 1110. Both *Progressive Gilroy* and *Royalty Carpet* compare the statutes' limitations periods to determine which is narrower and therefore applicable. An alternative approach is to consider the "purposes served by the competing statutes to determine which controls." (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 21.)

2

Because the CEQA claim was timely filed and served this case does not require us to decide whether CEQA or the planning and zoning law is narrower and controls. We would defer that issue until presented with a case where its resolution will be material to the outcome.

Thus, we concur in the judgment.


_____
SIGGINS, P. J.

I CONCUR:


_____
ROSS, J.[*]

Trial court:                                    Contra Costa County Superior Court

Trial judge:                                    Honorable Steven K. Austin

Counsel for Plaintiffs and Appellants:          LAW OFFICES OF STEPHAN C. VOLKER
                                                Stephan C. Volker
                                                Alexis E. Krieg
                                                Stephanie L. Clarke
                                                Jamey M.B. Volker


Counsel for Defendant and Respondent:           BEST BEST & KRIEGER LLP
                                                Malathy Subramanian
                                                Sarah E. Owsowitz

Counsel for Real Party in Interest and          MILLER STARR REGALIA
Respondent:                                     George B. Speir
                                                Arthur F. Coon

A154168

1